Ready for the case of United States v. Wendy Yurek, 18-1134. We'll hear from Mr. Jackson. May it please the Court, in opposing counsel, Robert Jackson on behalf of defendant appellant Wendy Marie Yurek. This appeal is most about the extreme differences in culpability between Mrs. Yurek and her co-defendant husband. First, and as the government now concedes, the district court utilized an incorrect standard in denying Mrs. Yurek a mitigating role adjustment under the guidelines. This reduction in offense level is warranted given Mrs. Yurek's very limited role in the planning or organizing of the offenses, and is especially warranted given the vast differences between her conduct and that of her husband. Second, these extreme differences in culpability, I believe, contributed to Mrs. Yurek's convictions. Both offenses of conviction have very defined intent elements, with tax evasion requiring the willful intent to avoid payment of taxes, and bankruptcy fraud requiring the specific intent to defraud. Essentially, these are both specific intent crimes. The trial evidence was insufficient to prove Mrs. Yurek maintained this requisite specific intent for either crime. And alternatively, Mrs. Yurek should have been granted a severed trial, such that a jury could have made a reliable determination as to her guilt, as opposed to likely lumping her together with her husband and imputing his conduct to her. The court did give a limiting instruction on that, right? Yes, Your Honor, it was, to consider the... And we presume the jury follows instructions. That's a presumption under Zafir, yes, Your Honor. Counsel, excuse me, your position in regards to possibly the husband testifying, did he ever sign an affidavit of anything for the court that he would waive Fifth Amendment rights or anything like this? Because I think that's required, isn't it, before the court to consider that? Under those McConnell factors, yes, Your Honor. Okay. And no, he did not sign an affidavit. I don't believe it ever got that far at the trial level. First, I want to talk about this mitigating role adjustment. That's a huge deal here, and it would have changed the starting point from which the district court began its sentencing calculus. The district court erroneously applied this, quote, central and necessary framework in denying the role adjustment that Mrs. Yerrick was central and necessary for these offenses, that she had to sign the tax forms or the bankruptcy petition. And the Sentencing Commission has rejected that analysis. In 2015, the Sentencing Commission put out Amendment 794, and this went into effect before the 2016 guidelines, but it certainly was in the 2016 guidelines. And the Sentencing Commission conducted a study and found that mitigating role is, quote, applied inconsistently and more sparingly than the commission intended. And with respect to economic crime cases like we have here, the study found that the adjustment was often applied in a limited fashion, and courts often deny mitigating role to otherwise eligible defendants if the defendant was considered integral. Let me ask you about preservation. Now, you did object to the PSI, but once the district court announced the sentence, there was no objection to the incorrect finding or the failure to apply the multiple factors under the application note, correct? That's correct, and I don't think an additional objection was needed. Well, let me ask you about that. I know you don't because you've argued it. But the question that you're presenting to us, as I understand it, is not when New York should have gotten a mitigating role adjustment. You're saying the district court erroneously explained the rationale by relying on a factor that is specifically disavowed as dispositive in the application note and failed to apply these multiple factors. That strikes me as just a prototypical objection to the procedural reasonableness of the sentence based on the failure to adequately or correctly explain it. And that is just illogical to say that that could be preserved by an objection to the PSI. Where am I wrong with that? Well, I think the claim is twofold. One, the district court erred in its analysis. Okay, let's take that part. So how can an argument that the district court erred in explaining its analysis be preserved by an objection to the PSI that preceded the judge's explanation of his analysis? I think if we look at Rule 51, and 51A talks about an exception is not necessary, and that's what would have had to have been taken after Judge Martinez issued his ruling. And 51B talks about, well, an objection is preserved at the time the motion is made seeking the order. Here, the objection to the PSI. The objection to the PSI talked about application note three, which did contain this non-exhaustive list of factors. So if the district court had correctly explained the multiple factors and said that Ms. Urich is not entitled to a mitigating role adjustment and didn't rely on the fact that her participation was essential to the enterprise and the like, then would you still have an appellate argument? I think we could. We could still argue that the district court's findings were unreasonable or factual. But that's not what you're arguing. No, because the district judge didn't even get that far. This non-exhaustive list of factors won't apply. To go back to your initial question, Ms. Urich's argument is twofold. One, that the district court applied the wrong analysis, and two, that she is entitled to a mitigating role adjustment. Now, the case will have to be remanded for resentencing so the district court can address whether it's a two-, three-, or four-point adjustment that's necessary. With respect to the—I do want to point out that the Sentencing Commission was very, very clear in stating in Application No. 3, the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. So here, Ms. Urich signing these Forms 433A with respect to offering compromise or the bankruptcy petition, that doesn't take her out of the running for a mitigating role adjustment. Counsel, I appreciate your arguments in regards to the sentencing aspect, but those aren't the only issues that you raise. The sufficiency of the evidence of one, the district court's failure to sever, I want you to address from this record, you can point to no evidence that would be sufficient for the conviction of your client in this evidence. Is that correct? There's nothing that the jury could have relied on that would have convicted your client in this matter. That's a sufficiency test, and you've put us to the burden of having to read this whole record, but I'm asking you, as an attorney, when we get into that record, we're not going to find any evidence that the jury could have relied on to convict your client.  That's my position, Your Honor. I know that's your position, but you also can read a record as well as we can. Yes, Your Honor. Okay. I think we're in a spot here where we're piling inferences upon inferences, and there was ample evidence with respect to Daryl Uric, but not so much with respect to Wendy Uric. Okay. I just want you to address where your position clearly is in regards to that. Now, what about the failure to sever the two trials? That's a very important issue to me. It's important to me, too, Your Honor. Well, I know that. I do very much want to discuss the sufficiency of the evidence with respect to tax evasion. If I could take just a moment to finish my thoughts on that, and I'll move into severance. I didn't mean to cut you off, Counsel. No problem, Your Honor. With respect to sufficiency of the evidence for tax evasion, this is a tax offense, and it required willfulness. So that's the voluntary, intentional violation of the known legal duty. And it was also up to the government to negate ignorance, misunderstanding, or a defendant's good faith belief she was not violating the law. In the United States v. Payne, this court's case, it referred to willfulness as requiring the specific intent to evade taxes. With respect to Ms. Uric, we have to look at her role in this. She was a homemaker. She was out of the workforce for two decades while she raised her three children. And it wasn't until 2004 that she reentered the workforce to work at her son's business, Viscoracity Credit Consultants. And she worked in a capacity, a clerical capacity, as an HR clerk and a payables clerk. Her education consisted of the equivalent of my understanding of an associate's degree in secretarial science. She was not an executive. She's not a sophisticated business person. She wasn't taking businesses public on the Toronto Stock Exchange. She wasn't engaging in restricted stock transactions. And she wasn't the one dealing with the army of accountants, lawyers, bankruptcy attorneys, tax lawyers. No, but she signed some declarations in the bankruptcy court. And she signed some statements about their interest or lack of interest in the loft and things like that. Those aren't rocket science financial nuances. Those are statements of simple declaratory ownerships or lack of ownerships. She signed those. There's no argument that Daryl grabbed her by the throat or had a gun at her neck when she signed them. So why isn't, I mean, why wouldn't that, because we only need anything that would support the jury, as Judge Baldock points out. Why isn't that enough? Your Honor, it's certainly true Mrs. Yerrick's not a rocket scientist, and she wasn't forced to sign these documents. But it's my understanding, and the record reveals, that her spouse, Daryl, went to the accountants and lawyers and had these documents prepared. And then they were presented to Mrs. Yerrick for her signature. As a spouse, I don't think she had any reason to question these documents. Well, I mean, isn't there a presumption when somebody signs them? Did she testify that she was forced or felt compelled by a dominant husband to sign these things? She did not testify at trial, and it's not our position that there was duress. So we have the signature. You have no evidence she was forced to do it. What is your point, that she simply didn't understand what she was signing? She wasn't the spouse working with these professionals. No, but the professionals prepared them. Do you have evidence that she ever, you don't because she didn't testify about this, but wouldn't you have needed evidence that I did not know what I was signing or something? And we get back to Cheek and this definition of willfulness. That the government has to negate her ignorance, her belief that she was not violating the law. Counsel, I know I'm interrupting again, but to continue where Judge Ebell is, isn't there evidence in this record in reference to the loft purchase and how she participated in all that? I mean, she was the actual moving force looking at the record in regard to that. I believe the government stated in the argument before us that it was Daryl Yerrick who solely negotiated that deal. I don't know if she was the moving force, but she did appear and sign the closing papers on behalf of her son, Justin. And she also signed that occupancy affidavit on behalf of her son, Justin, that your co-counsel had just argued a few moments ago that he had purchased it for an investment when he signed something under oath saying just the opposite. Co-defendant's counsel stated that. Right. But this brings up a very interesting point. There was a statute of limitations tied to these affirmative acts that were alleged. And that limitations period was six years from the date of the last affirmative act. So the jury was instructed with respect to either defendant that they had to find unanimously that each defendant committed an affirmative act after July 27, 2009, and unanimously agree which affirmative act that was. Was the signature of the occupancy affidavit within the six-year period? That was in 2006, Your Honor. That's why I bring this up. Okay. The government in its brief has acknowledged my narrow strike zone argument. Before we get to the loft purchase, we can only look at the affirmative acts within this after July 2009 strike zone. And they've only defended out of the 27, 26 affirmative acts alleged, they've only defended five of those in their brief. And those five are the signing, two of those are the signing of two IRS 433A forms in relation to the offering compromise, that's a signature. The submission of the bankruptcy petition, that's another signature. Mrs. Yerrick's signing of a Boulder Venture Partners check to pay condo association fees. And it's my understanding that Boulder Venture Partners operated its office out of that condo, and those association fees were a reasonable rent. And then finally signing of a veracity check to the country club, which veracity used to entertain folks such as the head of TransUnion Credit Bureau when they were making business deals. And that's it. That's within the strike zone. Moving on to Judge Baldock's question about severance, there's three reasons that severance was appropriate here. One, the evidence against Mr. Yerrick was just overwhelming. His actions and his dealings with the professionals, such that there was this really pronounced spillover effect, where having these two defendants tried together prevented the jury from making a reliable determination as to Mrs. Yerrick's guilt. Second, I think there's a confrontation violation here with respect to this deposition under oath in the bankruptcy proceeding. Those answers became potentially relevant to this criminal proceeding. The government emphasized Mr. Yerrick's response about the reason for the bankruptcy being the quote $1.2 million the IRS wants, and that was driven home in this whole recording of this 2004 examination that was played at trial. And three, the third reason for severance was this inability to cross-examine Mr. Yerrick, regardless of the confrontation violation, about what he did and what Mrs. Yerrick didn't do or didn't know about. And with that, I see that my time has expired. Mrs. Yerrick would respectfully request the court either reverse her convictions or remand for re-sentencing. Thank you. Thank you. We hear from the government. May it please the court, counsel. Peggy Rimes of the United States. With respect to the mitigating role adjustment. Counsel, before we use up all your time, I want to share with you, I'm really concerned with the severance issue. And so I'd rather, if you could for me, address that issue, because that's the one that's bothering me of the major issues. And your brief explanation, that would be helpful for me, please. Certainly, Your Honor. The two issues that are before this court on severance are the spillover effect and the confrontation clause. The McConnell issue was waived, and certainly there are no facts present for this court to analyze. First, focusing on the spillover effect. Because of the facts that the government has cited in its brief and will cite in a moment, the disparity of the evidence between the two defendants is not nearly what opposing counsel suggests. There is direct evidence of Wendy Yerke's participation in orchestrating the mechanics of this scheme, meaning that she was helping and participating and were aware of the personal payments for their personal expenses being made by Veracity, by Boulder Venture Partners. That's the core of this scheme. And she's in the middle of it. She played a different role than Daryl. Nobody ever tried to argue that differently. But she wasn't on the periphery, and she wasn't minor. She was in the middle of it, signing checks, giving direction. There is an email where she directs a Veracity employee. She states in this email, I tried to make that mortgage payment. It's to First Horizon. I wasn't able to do so. Here's the password. Here's the account name. Please do that for me. Make sure it gets paid. That's her directing the mortgage payments on the loft. And that's at the record, Supplemental Volume 5, page 1234. So there is not that disparity that Opposing Counsel claims. And there was a curative instruction that the court gave, which we presume would mitigate any possible prejudice in this case because of the severe holdings. With respect to the Confrontation Clause issue, that's the only issue that can support a brutal claim here. Opposing Counsel made a reference of, Confrontation aside, she should have had the ability to cross-examine him. That doesn't exist. Either you have a Confrontation right or you don't. And here, you don't. Because under the Smalls case, which Judge Balduck authored, and you made a very extensive analysis of Crawford and its progeny, you only have a Confrontation Clause issue and a Crawford issue if the statement by the declarant is testimonial. And first, this court has found in the Patterson case that where it is a co-conspirator statement, it is not testimonial. It is important to note here that Wendy Yerk has not challenged the court's finding that this was a co-conspirator statement. She does not attack that finding. Instead, she still claims there's a Confrontation Clause issue. Under this court's precedent, that cannot be the case. But even if we were going to just the Smalls decision and deciding on its tests, whether there's a testimonial statement here, there isn't. Because in Smalls, this court put forth two possible definitions of what constitutes a testimonial statement. And under both, the primary purpose of the declarant has to be to provide evidence or information to support a criminal prosecution. And the district court here correctly found that Daryl Yerk's primary purpose in testifying during the Rule 2004 exam in the bankruptcy proceeding was not to provide testimony or evidence against Wendy Yerk. Instead, his primary purpose was to achieve the bankruptcy discharge, which was in furtherance of the conspiracy, and therefore properly admitted as a co-conspirator statement. There is no Confrontation Clause issue here, and the severance was properly denied. Did that bankruptcy testimony involve Wendy? I mean, did it specifically implicate Wendy? The district court made a finding that there were no specific statements as to Wendy that were sufficiently inculpatory as to Wendy that would have invoked Bruton in any event if we had a testimonial statement. So I believe she was mentioned, but nothing to the effect of Wendy did it, or something that would essentially be accusing Wendy of the crimes at issue. So we have a fact finding by the district court that there are several arguments, of course, this only addresses one, but a fact finding that that testimony before the bankruptcy testimonial did not incriminate Wendy. Yes, Your Honor, and that's found in Volume 2, page 190 by the district court. Moving on to the mitigating rule issue, the review here is for plain error, and that is because below, Wendy Yerk did not state the grounds for her objection, and Rule 51B requires both. You have to state the objection and your grounds for the objection, and that's not a technical requirement. It's vital so that the district court has the opportunity to understand why you're objecting and to correct that. Here, functionally, what would have happened had she stated, Your Honor, you are applying the wrong legal analysis, is that we all would have pulled out our new copies of the Sentencing Guidelines, opened the page, found the five factors, and said, we better go through these five factors, and certainly the district court would have done that. And so you don't disagree with the fact that the district court did commit an error? Agreed. We concede. And you don't, if plain error, and you are urging plain error, obviously, the plain error standard, obviously, and you would concede Prong 2, correct? Yes. Now, at Prong 3, what do you do? Should we consider in determining whether or not the defendant's substantial rights were affected what the district court specifically referred to in going through the 3553A factors? I'm sorry. I'm not sure I followed the question. Well, let me put it this way. In going through the 3553A factors in sentencing for Wendy Yerk, the district court specifically referred to a number of things, like she has a relatively passive role. She was certainly not the one who orchestrated this. And so when we go through the multiple factors that you are conceding are applicable, all of those factors, in one way or another, go to assessing whether or not the defendant had a relatively minor role. And one of the little things that we have to go on is what the district court specifically said in arriving at the 27-month sentence in going through the 3553A factors and downplaying Wendy's role, which all suggests that if the district court had applied those multiple factors, he would have found either a 2- or 3- or 4-point adjustment. Your Honor, I disagree. And first, I would encourage you to look at the factual record when the court was looking at the mitigating role adjustment. While he applied the wrong legal analysis, there is a factual record that was discussed as to that sentencing adjustment. With respect to his 3553 factor analysis at the end, where he supports his variance statement, I don't believe that those are necessarily the facts that the court should be looking at when looking at mitigating role. Well, what else do we do? Well, we look at the factual record that was before the court regarding the mitigating role adjustment. And we decide whether or not, if we were the district judge, how we would come out on those multiple factors? Absolutely not, Your Honor. And you bring up a great point. Here the burden of proof is on Wendy Urich to prove that she had a substantial right affected by the error in this case. It is her burden to convince you that the court erred. It was also her burden below to convince the court that it should have given the mitigating role adjustment to begin with. Well, she argues that was done by the whole record. The whole evidence showed what a minor role she played. So she says that evidence is there on the record. There is a lot of evidence before the court on the record. I urge the court to consider that when that is applied to the actual five factors. But the decision on a minor or minimal is for the district court to make that decision in the first instance, not us. Well, that is correct. The district court has got a whole portfolio of experience there with this case that we don't have. Correct, Your Honor. But on a plain error standard of review, we have to not just reverse it because there was an error. We have to look to Prompts 3 and 4. And under Prompt 3, the defendant carries the burden of proving to you that her substantial rights were impacted. So if we look at this record and conclude that a district judge could, not had to, but could have found her minor or minimal, then we should remand for resentencing. No, Your Honor. I think instead it's the inverse because it is her burden of proof. If you look at this record and determine that the court could not have denied it based on these facts, then you remand. But if the record before this court supports the judge's finding that this should not be given to the defense, this court should affirm because it is a plain error standard of review. That the burden is on the defendant to prove to you that a mistake was made. Not that it might have been made, but that it was in fact made and that it impugned her substantial rights and the integrity of the judicial proceeding below. And that record is not before this court. The facts before this court support finding that four of those five factors weigh against her having a mitigating role adjustment. We concede she did not plan or organize the crime, but she was, while the framework, central and necessary, should not have been the rubric of legal standard that the court applied, it's not irrelevant either. First, factors one and four, which are she understood the scope and structure of the schemes and she extensively participated. Clearly those are met. She engaged in a year's long, at least six years, of having personal payments be funneled through Boulder Venture Partners and Veracity. And she's in the middle of directing those payments to the mayor. If we look at all the evidence and conclude that we would not reverse if the court had said, I'm going to apply the proper new guideline, I don't think she was minor or minimal. I think that's correct, Your Honor. If we in our minds say that if she had made that decision under the proper standard and we wouldn't have reversed it as clearly wrong, then we should not grant relief on this point. Your Honor, I'm not sure we're under a clearly erroneous standard because the wrong legal precedent was used. But I think that in trying to prove that she had her substantial rights impacted, the defendant has a heavy burden here. I've explained to this court why this factual record does not support the court's denial of her mitigating royal adjustment. I can't tell you if that's exactly the same as clearly erroneous or not, but it is more than just the court made an error and we're reversing it because he made an error or it made an error. And I would submit that this factual record before the court supports the judge's finding had it applied the five-factor analysis of finding that the mitigating role should not be applied. Well, I don't like us putting our judgment in lieu of the district court who had the trial, but I am struck by the force of your argument that she had the burden to prove she would be entitled to it. And so I don't quite know what that burden means, but in my mind I'm kind of wondering if it doesn't mean that we would have to be convinced under a sentencing position that she at least would have had a preponderance of the evidence likelihood of winning that or we shouldn't grant relief. I'm not sure whether that's the proper analysis or not. I would say that's the minimum that she would have to prove, that she would have prevailed had the court applied the proper analysis and used a preponderance of evidence. Given that she has the burden. I'm sorry? Given that she had the burden. That's correct, Your Honor. Why should we guess when we can send this back and tell the district court to do what it should have done and using the proper standard? Your Honor, because we are here under plain error. Well, I know you're here under plain error, but I'm saying you're wanting us to substitute our judgment for what the district court could have done. And like Judge Ebel is saying, it boils down to our reading it one way and the district court reading another. When it was the district court's job to do that, you're already conceding the first part. So why should we struggle with, well, should we do this or we shouldn't do that? Make the district court do it. I appreciate that, but the reason for the plain error standard of review is that requiring litigants to preserve objections in the first instance is vital to the judicial efficiency going forward. And if this court disregards the high burden she must prove under prongs three and four, we are eviscerating that important standard. We're already in three. Forget one and two. I mean, we're to that point. We are to that point. We are on prongs three and four. Can she prove that her substantial rights were affected and was there a serious showing that the integrity of the underlying judicial proceeding was jeopardized? Let's assume you'd lose on four because I think if you apply the wrong legal standard, that may satisfy four. But three is the one that at least your argument today is giving me some pause. I would say because there are facts before this court, and there is a strong factual record before this court regarding Wendy Urick's conduct, that the facts before this court, even under the proper legal standard, support the court's denial of this mitigating rule adjustment. This court should affirm her sentence. Again, the disparate evidence is not what the defense claims. She signs patently false documents to support this crime. What if the district court's explanation were more definitive with regard to how the district judge would have applied the multiple factors if he had been alerted to this application note? If the district judge's explanation had been more determinative, would you agree that we should then rely primarily on the district judge's explanation rather than our independent examination of the trial record? If I understand correctly, Your Honor, that would have required the court to have had notice of the error it was making, so I'm not sure. Well, I think it was the United States v. Trujillo-Torraza's case. And that was the case where the district judge, post-Booker, had expressed regret about the fact that the guidelines were mandatory. And if they had not been mandatory, he would have applied a lesser sentence. And our court reversed on prong three by saying, well, we know essentially that this affected the defendant's substantial rights. Not because our panel went and independently read the trial record. We know because we can read the tea leaves behind what the district judge had explained elsewhere at the sentencing transcript, which seems precisely what would be the most logical starting point for us here. I would concede that if you had that in this case, it would be helpful. I don't believe anywhere in the record you have that. In fact, there is a two-page dialogue between the district court judge and defense counsel where the district court judge is almost pleading with him, what am I to consider? Where is the objective standard? It's not just two defendants. One is higher, one is lower. The court was looking for the guidance, and it didn't get any. And that is why it is so important to proceed here under plain error, which does place the burden on the defense, and it is a substantial burden to prove her substantial rights were impacted. And I would encourage this court to review that factual record, observe that it supports the denial of that mitigating role adjustment, and affirm this sentence. And I see that my time has elapsed. Thank you for your consideration. Okay. Thank you. This matter will be submitted, and both counsel did a super job, superb job in your briefs and in your argument today. Thank you. Court is in recess until 9 o'clock.